(Cuyahoga County Court of Common Pleas)
July Term, 1897.

J. W. CALDWELL, v. THE BOARD OF
COUNTY COMMISSIONERS, Etc.

The Act of the legislature, "for the Suppression of Mob Violence," passed April 10, 1896, 92 Ohio Laws 136, is unconstitutional.

DISSETTE, J.

This case and two others, that of George E. Plumb and Owen Murphy, against the same defendants, the Commissioners of Cuyahoga county, are brought to recover damages from the county because of personal injuries received by the plaintiffs at the hands of a mob during the disturbance last season at the works of The Brown Hoisting and Conveying Machine Company, of Cleveland, Ohio.

The allegations in the petition set out, that previous to the time that the injuries were received, the plaintiffs were in the employ of the Brown Hoisting and Conveying Machine Company; that for a long time there had been rioting in the vicinity of the works of said company; that mobs had assembled and had made threats of violence, and had frequently assaulted the employes of said company; that the defendants well knew of the condition of things in the neighborhood of the worsk; that these plaintiffs were on their way home from their daily labor at the works of said company, and were peacably passing along the streets and disturbing no person,—interfering with no person, when they were set upon and assaulted by a collection of individuals who had assembled for an unlawful purpose, intending to do damage and injury to them and other workmen, and pretended to and tried to exercise correctional power by violence over these plaintiffs, without any autnority of law and contrary to law, and that they were assaulted and injured by this mob.

The allegations as to the character of the injuries are different in these petitions in each instance, but they all allege that they have suffered lynching at the hands of the mob; that they were disabled from earning a livelihood by manual labor for a certain length of time; that they were not offered such protection as they were entitled to by law, and that by reason thereof, the Board of County Commissioners of Cuyahoga county, became and are liable to each one of these plaintiffs in the sum of one thousand dollars; and that as provided by the laws of the state of Ohio, said Board of Commissioners of said county became indebted to each one of these plaintiffs, and are now indebted to them for that amount, to-wit— the sum of one thousand dollars each, and they ask judgment for that amount.

The defendant, by its solicitor, files a demurrer to the petition in each case on the following grounds:

First—Because the petition does not state facts sufficient to constitute a cause of action.

Second—Because the statute under which the plaintiff bring their actions is in violation of the constitution of the state of Ohio.

Third—Because said statute is in violation of the constitution of the United States.

With the exception of the case of Murphy v. The Board of County Commissioners, the petitions allege that the county, through its commissioners, had full notice of the assemblage of the mob; and in the Murphy case the attention of the court is called to the fact that there is no allegation in the petition that the county had notice. The court is of the opinion, that to make a good case here, it is essential for the plaintiff to show that the county had notice, or at least give a good reason for failing to do so; if it is necessary to show notice, it should be alleged in the petition.

But the main questions involved in the discussion and raised by the demurrer, are as to the constitutionality of the statute under which these actions have been brought, and that is raised by both the first and second grounds of the demurrer.

These cases are brought under a statute entitled, An act for the suppression of Mob Violence, passed April 10, 1896, Ohio Laws, vol. 92, page 136. So much of said act as is necessary to this decision is as follows:

"Section 1. Be it enacted by the General Assembly of the state of Ohio, that any collection of individuals, assembled for any unlawful purpose, intending to do damage or injury to any one or pretending to exercise correctional power over other persons by violence, and without authority of law, shall for the purposes of this act be regarded as a "mob," and any act of violence exercised by them upon the body of any person, shall constitute a "lynching."

Section 2. The term "serious injury," for the purposes of this act, shall include any such injury as shall permanently or temporarily disable the person receiving it from earning a livelihood by manual labor."

Section 3. Any person who shall be taken from the hands of an officer of justice in any county by a mob, and shall be assaulted by the same with whips, clubs, missiles, or in any other manner, shall be entitled to recover from the county in which such assault shall be made, the sum of one thousand dollars as damages, by action as hereinafter provided.

Section 4. Any person assaulted by a mob and suffering lynching at their hands, shall be entitled to recover of the county in which such assault is made, the sum of five hundred dollars; or if the injury received is serious, the sum of one thousand dollars; or if it result in permanent disability to earn a livelihood by manual labor, the sum of five thousand dollars.

Section 7. An order to the commissioners of any county against which such recovery may be made, to include the same with

costs of action in the next succeeding tax levy for said county, shall form a part of the judgment in every case."

The first objection raised and discussed, but not insisted upon very seriously by counsel for the defendant, was that in attempting to legislate upon this subject in this manner—that is, to provide for a recovery from the county in a case of injuries received at the hands of a mob, the legislature had exceeded its powers; but a careful con sideration of the subject will, I think, lead to a different conclusion In very many states the legislatures have enacted laws making counties and municipalities therein, liable for property destroyed by mobs; and in each case such laws have been held to be constitutional by the supreme courts of the several states.

Other states have, at various times, passed statutes somewhat similar to the one under consideration; making the county liable for acts of personal violence inflicted by mobs.

There is no good reason why, if the law making a county liable for the loss of property destroyed by a mob is constitutional, a law making a county liable for personal injuries or for the loss of life at the hands of a mob should not also be held to be constitutional. The legislature should have as much right to protect persons as property. Indeed, on an examinaiton of the decisions of the supreme courts on this question in the states in which they have enacted laws similar to the one under consideration, the right of the legislature of the state to enact such a law, if in its wisdom it deems such an act potent for the suppression of mob violence. has never been questioned.

In most of the states, however, where laws have been enacted to protect persons from mob violence, the conviction and punish ment of the offenders, or the parties who inflicted the assault. was a bar to a recovery of any damages, and if a judgment had been obtained against the county such conviction operated as a satisfaction of that judgment This law has no such provision. Whether the offenders composing the mob are brought by the authorities to punishment or not, does not affect the right of action or prevent a recovery. It lacks, therefore, the spur of the ancient law said to have been introduced into England from Sweden and Denmark, by King Canute, to subject the vill or hundred in which a murder was perpetrated, to a heavy fine or amercement un less the murderer was produced.

As I said before, this law does not relieve the county, if the persons exposed to mob are apprehended and punished.

Nevertheless, we think it was a subject upon which the legislature had full power to act and to omit, if it so determined, what seems to the court to be a powerful incentive to bring the offenders to punishment.

Again, it is urged that at common law there is no obligation resting upon the county to prevent mob violence; that the present act does not undertake to impose upon a county such a duty; and there is no other statute in Ohio that imposes such a duty upon the county; therefore this legis· lation is defective in imposing a penalty where there is no duty or obligation to ob serve.

It would seem more logical for the legislature to declare it to be the duty of the county to preserve order within its borders, and to invest the commissioners of the county with authority to use any means within their power to suppress mobs, prevent riots and protect law-abiding citizens from violence, before passing a law making the county liable for injuries inflicted by a mob. Nevertheless, we think this hardly a fatal objection to this law, and that we can fairly consider it as imposing an obligation upon the county which did not heretofore exist. The fact that a law is defective does not always make is unconstitutional.

But to come to what, in the mind of the court, is the most serious objection to this law, and the one which raises the strongest doubt as to its constitutionality. Let us examine some of the provisions of the sections we have read: It will be observed that section of this law provides—First, "that any collection of individuals assembled for any unlawful purpose, intending to do damage or injury to anyone, and pretending to exercise correctional power over other persons by violence, and without authority of law, shall for the purposes of this act, be regarded as a mob; and any act of violence exercised by them upon the body of any person, shall constitute a lynching."

We have in this section a definition of what a mob is,—"any collection of individuals." Two or three persons may compose a mob. We have also a definition of what is known under this act by the term "lynch ing." "Any act of violence exercised by them, "that is, by the mob, "upon the body of any person, shall constitute a lynching."

Section 2, defines the term "serious injury" to be 'any such injury as shall permanently or temporarily disable a person receiving it, from earning a livelihood by manual labor."

Section 3, 4 and 5, of this law provide for the amount of damages which the persons suffering at the hands of the mob may recover.

Section 3, provides:—"Any person that shall be taken from the hands of an officer of justice in any county by a mob, and shall be assaulted shall be entitled to recover from the county for such assault made the sum of one thousand dollars damages.

Section 4 provides:—"That any person assaulted by a mob and suffering lynching at their hands shall be entitled to recover the sum of five hundred dollars; and if the injury is serious the sum of one thousand dollars; or if it results in permanent disability to earn a livelihood by manual labor the sum of five thousand dollars.

Section 5 provides:—"That the legal representative of any person suffering death by a lynching at the hands of a mob shall be

entitled to the sum of five thousand dollars damages.

Section 7 provides:—"An order to the commissioners of any county against which such recovery may be made to include the same with costs of action in the next succeeding tax levy for said county shall form a part of the judgment in every case.

Now according to the terms of the statute it may fairly be said that two or three persons assembled for an unlawful purpose shall be a mob; that any act of violence by them exercised upon the body of another, shall constitute a lynching; that the person, suffering a lynching shall be entitled to re cover of the county the sum of five hundred dollars. That is to say, two or three individuals may conspire and meet together for the unlawful purpose of making an assault upon a third; and no matter how slight that assault may be, if it comes fairly under the terms of this statute, and is an act of violence, the person assaulted is entitled to recover from the county the sum of five hundred dollars; by this statute, the term "serious injury" shall include any such injury as shall permanently or temporarily disable the person receiving it from earning a livelihood by manual labor.

Now, supposing the assault in the first case is of a trivial character. It may be unpleasant. It may consist of blows or kicks. There may be nothing serious in it; no blood drawn; no bones broken; no disability caused thereby; no injury of any serious character at all sustained; yet the country is liable to pay that individual, and the commissioners are required to include in their next tax levy the sum of five hundred dollars for his benefit; or, in a case of temporary disability, where the party has received what he says is a serious injury, and is disabled temporarily from earning a livelihood by manual labor, the temporary disability may be such as would prevent a man from earning a livlihood by manual labor for two or three days, or may be a week, and no longer; yet, by the provisions of this statute, he is entitled to recover from the county, and the commissioners are required to include in the tax levy for his benefit, to be paid to him by the tax payers of the county, the sum of one thousand dollars.

The language of this statute in providing for the amount of damages for which recovery may be had, does not merely establish the maximum which may be recovered in each case, and require the plaintiff in each action to prove how much he has been damaged, but it fixes the amount and says what he shall receive. In other words, if he has proven the fact of the riotous assemblage for the unlawful purpose, and the injury to himself, the statute says how much he shall then be entitled to recover. It deprives the county of the benefit of the judgment of the jury as to the extent of the plaintiff's injuries, and imposes upon tax-payers of the county the burden of paying the amount

which it fixes, whether the party injured has suffered that amount in damages or not.

Under the definition of "lynching," a man may not be damaged five cents, or five dollars; yet the tax-payers of the county are required by this act to pay him five hundred dollars.

Under the definition of "serious injury" a man be disabled for three days or for a week; and the actual damage to him may not be twenty-five dollars, but the tax-payers of the county, under this act are required to pay him the sum of one thousand dollars.

The state in its sovereign power has a right to impose taxes, to designate the proper subjects of taxation, and to require the people of the state to bear these burdens; but the burdens it imposes must be of a public character. The taxes thus raised must be for a public purpose. It is beyond the power of the legislature to compel the tax-payers to contribute money for private purposes.

Any act of the legislature which compels the tax-payers to contribute to a private individual compensation for damages that he has not suffered, is so far as it is in excess of actual damages, unjust and enriching the individual at the expense of the public, and is so far for private purposes.

It may be said that the legislative intent was not to fix the amount to be received in each case absolutely, but rather, to fix the maximum; and that the court should read into this law something that is not found therein; that by the insertion of the words "not to exceed," so far as that statute would read "not to exceed five hundred dollars" or "not to exceed one thousand dollars," or "not to exceed five thousand dollars," would obviate all difficulty.

But the authorities generally agree that such liberties should not be taken by the courts with legislative acts, and that when penalties are imposed by statute, and the sum is fixed, it would be "judicial legislation," to attempt to so change the terms of the statute as to provide for a different recovery.

Therefore, for the reasons that this act deprives the defendants, the County Commissioners, who represent the tax-payers, of the right to have damages in each case ascertained and determined by a jury, and gives the party complaining, the right to recover from the tax-payers an amount in excess of the damages which he may have actually sustained, I am constrained to regard the act as invalid.

The demurrer will therefore be sustained.

Willis, Vickery and Albert Holmes, Attorneys of Plaintiff.

P. R. Kaiser, for Defendants.